ESTADO LIBRE ASOCIADO DE PUERTO RICO, recurrido, *v.* P.M.C. MARKETING CORP. h/n/c FARMACIAS EL AMAL ET AL., peticionarios.

*Número:* CC-2002-741 *Resuelto:* 14 de diciembre de 2004

480

*Marcos A. Morell Corrada* y *Diana Azizi De Arbona*, abogados de la parte peticionaria; *Roberto J. Sánchez Ramos*, procurador general, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Los días 16 y 18 de septiembre de 1998, el Departamento de Justicia presentó diecinueve querellas ante el Departamento de Asuntos del Consumidor (D.A.Co.) contra P.M.C. Marketing Corp. h/n/c Farmacias El Amal y Saleh Yassin, Aida Yassin y Mohammad Yassin, en su carácter personal y como directivos y oficiales de la corporación antes mencionada (PMC Marketing).

En las querellas, el Departamento de Justicia alegó que, durante varios domingos y días feriados entre el 19 de noviembre de 1994 y el 17 de agosto de 1997, y en otra ocasión, el 2 de noviembre de 1997, varios agentes del Negociado de Investigaciones Especiales del Departamento de Justicia compraron ciertos artículos en las farmacias El Amal cuya venta, en el horario en que fueron adquiridos, estaba prohibida por ley.

Se le imputó a los querellados haber violado las disposiciones de la Ley Núm. 1 de 1 de diciembre de 1989, según enmendada, conocida como la Ley para Regular las Operaciones de Establecimientos Comerciales, o Ley de Cierre, 29 L.P.R.A. sec. 301 *et seq.*; la Ley Núm. 77 de 25 de junio de 1964, según enmendada, conocida como la Ley de Monopolios, 10 L.P.R.A. sec. 257 *et seq.*, y el Reglamento sobre

Competencia Justa Núm. VII de 29 de mayo de 1980, Expediente Núm. 2648.(¹)

Luego de recibir la prueba presentada por las partes, D.A.Co. *determinó que las querellas interpuestas estaban prescritas por haber transcurrido más de un año desde la fecha de los alegados hechos hasta la fecha de su presentación.* En el caso específico de la querella formulada a raíz de lo alegadamente sucedido el 2 de noviembre de 1997 (querella Núm. 100003557 y, posteriormente, caso en apelación Núm. KLRA0200139), D.A.Co. la desestimó por entender que, aunque fue presentada dentro del término prescriptivo, procedía su desestimación pues, según su interpretación, "la única imputación que se le podría hacer a la parte querellada [al amparo de la Ley de Cierre] es la de no tomar las precauciones necesarias para evitar vender un artículo no exento pero [no le era imputable a PMC Marketing, porque] a la fecha de los hechos no existía reglamento alguno que dispusiera las precauciones que se debían tomar para no vender artículos no exentos". Apéndice, pág. 34.

El 28 de enero de 2002, el Estado Libre Asociado de Puerto Rico (E.L.A.) solicitó la *reconsideración* de la resolución emitida por D.A.Co.; se *entendió rechazada* por el foro administrativo al éste no expresarse en torno a la referida moción dentro del término reglamentario dispuesto para ello.

Inconforme, el E.L.A. recurrió ante el Tribunal de Apelaciones mediante diecinueve solicitudes separadas de revisión, presentadas el 7 de marzo de 2002. Se alegó que D.A.Co. había errado al desestimar la causa de acción ad-

---

(¹) El citado reglamento dispone en su Art. V que "[t]oda violación a cualquiera de las disposiciones de este Reglamento estará sujeta a las sanciones y acciones conforme al Artículo 3 de la Ley Núm. 77 de 25 de junio de 1964, según enmendada". Por ser esta disposición reglamentaria, al menos en su carácter punitivo, una mera referencia a las disposiciones de la Ley de Monopolios, no la mencionaremos en nuestro análisis.

ministrativa instada; esto por entender el E.L.A. que aplica en estos casos el término prescriptivo de cuatro años correspondiente a los procesos penales bajo la Ley de Monopolios. Según el E.L.A., la Ley de Cierre expresamente establece que las acciones administrativas se tramitarán a tenor con lo dispuesto en la Ley de Monopolios.

En el caso particular de la Solicitud de Revisión de la Resolución de D.A.Co. en cuanto a la querella Núm. 100003557, el E.L.A. alegó que la agencia administrativa erró al desestimar la querella bajo el fundamento de que vender artículos no exentos bajo la Ley Núm. 1, ante, no constituye una violación a ésta.

El 20 de marzo de 2002, PMC Marketing presentó ante el foro apelativo intermedio una Moción en Oposición a Solicitud de Revisión por Falta de Jurisdicción. Alegó, en síntesis, que el Tribunal de Apelaciones *carecía de jurisdicción* por haberse presentado el recurso cincuenta y siete días después de haberse emitido la resolución apelada. Sostuvo que no existía evidencia clara de que la moción de reconsideración hubiera sido presentada ante D.A.Co. dentro del término reglamentario requerido y que, asumiendo que ello así hubiera sido, nunca se notificó a PMC Marketing acerca de su presentación, razón por la cual la referida moción de reconsideración, de haber sido en efecto presentada, no interrumpió el término jurisdiccional para acudir en revisión ante el Tribunal de Apelaciones. El Tribunal de Apelaciones declaró *sin lugar* la solicitud de desestimación de PMC Marketing.[2]

El 28 de junio de 2002, el referido foro apelativo dictó sentencia, mediante la cual *revocó* la resolución de D.A.Co., por entender que el término prescriptivo para las

---

[2] Según expuso, *posteriormente*, el Tribunal de Apelaciones en el esc. 3 de su Sentencia de 28 de junio de 2002, págs. 3–4, "[se sometió] prueba ante este Tribunal que [sic] dicha solicitud de reconsideración había sido notificada por correo a los recurridos" y "[e]n su consecuencia, [el Tribunal de Apelaciones declaró] No Ha Lugar la petición [de desestimación] de los recurridos".

causas de acción como las de autos es de cuatro años y no de uno, como indicó el foro administrativo. En cuanto a la decisión de D.A.Co. sobre la querella Núm. 100003557 (Caso KLRA0200139), el foro apelativo intermedio *también* *revocó* el dictamen de la agencia administrativa por entender que la disposición legislativa pertinente, si bien exige la toma de medidas de precaución por parte del comerciante para evitar el acceso del público a productos no exentos durante horas determinadas, exige también que las farmacias se abstengan de vender los productos no exentos.

Inconforme con la sentencia emitida por el Tribunal de Apelaciones, la parte querellada recurrida PMC Marketing presentó oportunamente una petición de *certiorari* ante nos, en la que alegó que el tribunal apelativo intermedio incidió al

> ... asumir jurisdicción y resolver que los querellados recurrentes mostraron suficiente prueba para concluir que en efecto radicaron una Moción de Reconsideración que interrumpió el término el término de treinta (30) días que tenía la parte querellante-recurrente para solicitar el Recurso de Revisión.
>
> ... revocar la Resolución del D.A.C.O. y resolver que las querellas de marras no estaban prescritas toda vez que el término prescriptivo aplicable a las acciones administrativas era de cuatro (4) años y no de un (1) año, como había resuelto el D.A.C.O.
>
> ... revocar al D.A.C.O. en el Recurso KLRA0200139 y resolver que la sola venta de un artículo no exento durante un período de cierre constituye una violación a la Ley de Cierre sin importar las medidas de precaución que tome la empresa exenta, su política institucional, la estrategia empleada por el agente investigador para adquirir dicho producto y la ausencia de un Reglamento de Precauciones. Petición de *certiorari*, pág. 9.

*Expedimos* el recurso. Contando con la comparecencia de las partes, y estando en posición de resolverlo, procedemos a así hacerlo.

# I

 Por razones obvias, *resulta forzoso examinar, en primer lugar, la controversia relativa a la alegada falta de jurisdicción del Tribunal de Apelaciones,* mencionada en el primer señalamiento de error.([3]) Veamos.

A. La Regla 30 de Procedimiento Adjudicativo de D.A.Co., *vigente al momento de los hechos de este caso,* Reglamento Núm. 5416 de 24 de abril de 1996, págs. 9–10, *disponía,* en lo aquí pertinente:

> 30.1 La parte adversamente afectada por una resolución u orden parcial interlocutoria o final podrá, dentro del termino [sic] de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano *o no actuare dentro de los quince (15) días, el terminó* [sic] *para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince días,* según sea el caso ....
> 30.2 *La moción de reconsideración será jurisdiccional para poder solicitar la revisión judicial* ....
> 30.4 Una parte no conforme con la resolución de su solicitud de reconsideración podrá solicitar la revisión judicial de la orden cuya reconsideración solicitó, mediante el cumplimiento de los requisitos establecidos por ley.

---

([3]) En *Carattini v. Collazo Syst. Analysis, Inc.,* 158 D.P.R. 345, 355-370 (2003), expresamos:

"Las cuestiones de jurisdicción, por ser privilegiadas, deben ser resueltas con preferencia. De carecer un tribunal de jurisdicción, lo único que puede hacer es así declararlo y desestimar el caso. *Vega et al. v. Telefónica,* 156 D.P.R. 584 (2002). ...

. . . . . . . .

"... [U]n recurso tardío sencillamente adolece del grave e insubsanable efecto de privar de jurisdicción al tribunal al cual se recurre. *Juliá et al. v. Epifanio Vidal, S.E.,* ante; *Hernández v. Marxuach Construction Co.,* 142 D.P.R. 492 (1997). Como tal, su presentación carece de eficacia y no produce ningún efecto jurídico, pues ya en el momento de su presentación no hay autoridad judicial para acogerlo. Íd. Sobre el concepto medular de jurisdicción se sostiene toda la vitalidad y autoridad de los tribunales en nuestro sistema de gobierno. *Empress Hotel, Inc. v. Acosta,* ante. Cuando un tribunal dicta una sentencia sin tener jurisdicción sobre las partes o la materia su decreto es uno jurídicamente inexistente."

30.5 La radicación de una solicitud de revisión judicial suspenderá los efectos de una resolución final del Departamento, pero no los de una orden interlocutoria, a menos que el tribunal disponga otra cosa. *Ibíd.* (Énfasis suplido.)

Respecto a la solicitud de revisión judicial, el Art. 3(d) de la Ley de Monopolios, ante, dispone que

[l]a Oficina de Asuntos Monopolísticos o la parte querellada cuando estén afectados por una decisión del Departamento de Asuntos del Consumidor tendrán derecho a la revisión ... dentro de los treinta (30) días a partir de la fecha de la notificación de la referida decisión. 33 L.P.R.A. sec. 259.

■ A la luz del claro mandato contenido en las disposiciones antes transcritas, resulta evidente que la presentación de una solicitud de reconsideración *era* un requisito de carácter jurisdiccional antes de que se pudiera acudir, en revisión de una resolución de D.A.Co., ante el foro judicial.([4])

Por otro lado, la Regla 29.1 de Procedimiento Adjudicativo de D.A.Co., ante, pág. 9 —*también vigente al momento de los hechos del presente caso*—([5]) en lo aquí pertinente, *disponía*:

Toda parte que radique un escrito ante el Departamento [de Asuntos del Consumidor] *vendrá obligado a notificarlo de inmediato a las demás partes que hayan comparecido en el pro-*

---

([4]) El referido Reglamento Núm. 5416 fue sustituido por el Reglamento de Procedimiento Adjudicativo del Departamento de Asuntos del Consumidor (D.A.Co.) de 18 de octubre de 2000, Expediente Núm. 6219, hoy vigente. Entre otras enmiendas, *el nuevo reglamento eliminó lo dispuesto en el reglamento anterior respecto al carácter jurisdiccional de la Moción de Reconsideración (R. 30.2 del reglamento derogado).* El nuevo reglamento, en su Regla 28 sobre "reconsideración y revisión judicial", nada dispone al respecto, por lo que, al regir supletoriamente la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.*, la presentación de la moción de reconsideración ante la agencia *ya no es un requisito jurisdiccional para recurrir a los tribunales.* Véase *Aponte v. Policía de P.R.*, 142 D.P.R. 75, 81–82 (1996). Véase, además, D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, 2001, pág. 482.

([5]) Esta regla fue sustituida por la Regla 27 del nuevo Reglamento Núm. 6219. No obstante, el contenido de ambas reglas, en cuanto al requisito de notificación de los escritos de las partes, es prácticamente idéntico.

*cedimiento administrativo* .... Toda notificación se hará el mismo día de radicación ... y se llevará a cabo mediante el envío de una copia del escrito por correo a las partes o sus representantes, a las direcciones postales que hayan informado. La notificación por correo puede ser sustituida por notificación personal o por transmisión electrónica. (Énfasis suplido.)

■ Tenemos, en consecuencia, que la exigencia reglamentaria impuesta a cualquier parte —de *notificar* a las demás partes de todo escrito sometido ante la agencia administrativa— *incluía* la *notificación* de la presentación de una moción de reconsideración. Este requisito de notificación, en ausencia de una disposición expresa al efecto —como sucede en el caso de autos— *es de cumplimiento estricto.* Véanse: *Lagares v. E.L.A.*, 144 D.P.R. 601 (1997); *Febles v. Romar*, 159 D.P.R. 714 (2003).

¿Resolvió, correcta y apropiadamente, el Tribunal de Apelaciones el planteamiento de falta de jurisdicción que le hiciera PMC Marketing? *Entendemos que no*; veamos por qué.

B. Según surge de los hechos del presente caso, D.A.Co. emitió su resolución, para cada querella presentada, el 9 de enero de 2002, notificándola el mismo día. El 28 de enero del mismo año, el E.L.A. alegadamente solicitó la reconsideración de la resolución al foro administrativo, sin que este foro actuase dentro del término reglamentario de quince días dispuesto para ello.

El 7 de marzo, el E.L.A. presentó el recurso de apelación ante el Tribunal de Apelaciones, esto es, cincuenta y siete días después de la notificación de la resolución y ventiocho días después de la expiración del término de quince días con que contaba D.A.Co. para actuar sobre la solicitud de reconsideración. La recurrida PMC Marketing se opuso al recurso de revisión presentado ante el Tribunal de Apelaciones *por entender que el recurso había sido sometido a destiempo ante el Tribunal de Apelaciones porque la moción de reconsideración nunca fue presentada ante D.A.Co.*

*o por el fundamento de que, aun cuando dicha moción hubiera sido presentada, nunca se notificó; razón por la cual nunca se interrumpió el término para la presentación de la apelación.*

En apoyo de su planteamiento, PMC Marketing presentó unas declaraciones juradas de sus dos abogados. En primer lugar, sometió una declaración jurada de la Lcda. Diana Azizi de Arbona, la que asegura, bajo juramento, "haber examinado personalmente todos los expedientes que constan en el D.A.C.O." *y que no encontró allí ninguna "moción de reconsideración presentada por el Estado Libre Asociado de Puerto Rico* ni ninguna otra moción luego de emitida la Resolución el 9 de enero de 2002". (Énfasis suplido.) Apéndice, Anejo D, pág. 60. Aseguró bajo juramento, *además*, la referida abogada, *no haber recibido moción de reconsideración alguna de parte del E.L.A.*

PMC Marketing presentó, *además*, la declaración jurada de otro de sus abogados, el Lcdo. Marcos A. Morell Corrada, *en la que éste asegura*

> *... nunca [haber] recibido por medio alguno, notificación de que el Departamento de Justicia, sus dependencias u oficinas ha[yan] radicado [alguna] solicitud de reconsideración ante el Departamento de Asuntos del Consumidor* en las querellas mencionadas en el inciso anterior ....
>
> ... que personalmente [fue] al Departamento de Asuntos del Consumidor el día 18 de marzo de 2002 y examin[ó] los récords oficiales de las querellas de marras *y en ninguna de las mismas aparece evidencia alguna que sostenga que el Departamento de Justicia o sus dependencias haya radicado una solicitud de reconsideración.* (Énfasis suplido.) Apéndice, Anejo C.

Por su parte, el E.L.A., en su Moción en Oposición a Solicitud de Desestimación del Recurso por Falta de Jurisdicción, indicó que

> ... la Oficina del Procurador General se comunicó con la Oficina de Asuntos Monopolísticos, quienes aseguran haber enviado copia del escrito de reconsideración al Lcdo. Morell y a la

Lcda. Azizi el mismo día en que se presentó el escrito ante D.A.C.O. Apéndice, *Exhibit* VI, págs. 64–65.

Alegó, también, que aunque enviaron la copia por correo, el Reglamento de D.A.Co. permite que las notificaciones de esta índole sean sustituidas por la notificación personal o electrónica.

El E.L.A., en apoyo a su contención, sometió las declaraciones juradas de las Lcdas. Judith Martínez Fortier e Irma Rodríguez Justiniano, y de la Sra. Martha Marrero Rivera. La licenciada Martínez declaró haber redactado la Moción de Reconsideración y que en ésta se señala expresamente que se notificó por escrito al licenciado Morell y a la licenciada Azizi a sus respectivas direcciones. Declaró, además, que se gestionó el envío de las copias de la moción *a todas las partes* y que, al momento de prestar su declaración, no había recibido ninguna de las notificaciones devueltas por el correo. La señora Marrero declaró, por su parte, haber enviado por correo las copias de la moción de reconsideración a los abogados de la querellada y la licenciada Rodríguez declaró de similar manera.

Como vemos, el Tribunal de Apelaciones tuvo ante su consideración varias declaraciones juradas traídas por una y otra parte, atestiguando la notificación de la moción de reconsideración o la ausencia de ésta. *Ninguna otra prueba fue presentada al efecto. Es entonces cuando, con este limitado cuadro evidenciario y aparentemente adjudicando mayor credibilidad a unas declaraciones juradas que a otras, el Tribunal de Apelaciones juzgó probado el hecho de que la solicitud de reconsideración sí fue sometida ante D.A.Co y notificada por correo a PMC Marketing.* En consecuencia, declaró "sin lugar" la petición de esta última para que se desestimara el recurso por falta de jurisdicción.

*Por la naturaleza de la controversia que en este caso tuvo ante sí el Tribunal de Apelaciones —si se realizaron o no determinadas gestiones— resulta evidente que se trata de un asunto de credibilidad.* No obstante, el Tribunal de

Apelaciones emitió su decisión tomando en consideración *únicamente* el testimonio jurado, *por escrito*, de dos abogados que aseguraban no haber recibido notificación alguna de la moción de reconsideración en controversia y las declaraciones juradas de dos abogados y una secretaria que daban fe de lo contario.

■ La determinación del tribunal apelativo constituyó, ciertamente, una determinación *sumaria* sobre un asunto en controversia con respecto al cual las partes sometieron *versiones incompatibles entre sí*. Hemos expresado en ocasiones anteriores *que hay litigios y controversias que, por su naturaleza, no hacen deseable o aconsejable que se resuelvan sumariamente; ello debido a que difícilmente en tales casos el tribunal puede reunir ante sí toda la verdad de los hechos a través de declaraciones juradas o deposiciones, esto es, controversias en las que el factor credibilidad juega un papel esencial, si no el decisivo, para llegar a la verdad.* Véanse: *Rosario v. Nationwide Mutual*, 158 D.P.R. 775 (2003); *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294, 301 (1994).

Debemos aclarar que si bien en el presente caso no estamos ante la figura de la sentencia sumaria propiamente dicha, *sí concurren todos los elementos que hacen aplicable la doctrina reseñada.* Esto es, aunque la presente controversia versa sobre un dictamen del Tribunal de Apelaciones en cuanto a su jurisdicción sobre determinado recurso de apelación, *es en dicho foro que surgió o nació la controversia con respecto a si determinadas gestiones de radicación y notificación fueron o no realizadas.*

■ Ante esta situación particular, los criterios establecidos para las determinaciones judiciales sumarias *resultan aplicables a una determinación que "sumariamente" pretenda hacer un tribunal sobre una controversia secundaria surgida dentro de una controversia principal, como es la de determinar su jurisdicción.*

■ Ante este cuadro fáctico y jurídico, y sin perder de vista las particularidades del presente caso, *resolvemos que el Tribunal de Apelaciones erró al conformarse con la mera presentación de unas declaraciones juradas para dirimir la credibilidad de las partes.* Para ello, *debió haber celebrado una vista,* al amparo de la Regla 80(A) del Reglamento del Tribunal del Apeaciones de 20 de julio de 2004 —*In re Aprobación Reglamento T.A.,* 162 D.P.R. 444 (2004)— y allí sopesar los argumentos de cada parte, recibir cualquier otra prueba adicional que considerara pertinente *y, más importante aún, "oír y ver declarar a los testigos" que habían suscrito las declaraciones juradas previamente sometidas.* (Énfasis suplido.)[6]

En nuestro criterio, *únicamente de esta manera hubiese estado el Tribunal de Apelaciones en posición para resolver adecuadamente las controversias surgidas debido a las posiciones irreconciliables asumidas por las partes y, en consecuencia, si el recurso de revisión judicial fue oportunamente presentado; esto es, resolver si tenía o no jurisdicción para atender la referida solicitud de revisión judicial.*[7]

Concluimos, en consecuencia, que erró el Tribunal de Apelaciones al asumir jurisdicción sin haber celebrado previamente una vista en la que dirimiera la controversia referente a la falta de radicación o notificación de la moción de reconsideración ante la agencia administrativa y la consecuente presentación, oportuna o a destiempo, del recurso de revisión judicial. Hasta tanto el Tribunal de Apelaciones

---

[6] En ocasiones anteriores hemos dicho que la determinación de credibilidad del tribunal sentenciador " 'es merecedora de gran deferencia por parte del tribunal apelativo *por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada ya que él fue quien oyó y vio declarar a los testigos'* ". (Énfasis suplido.) *Argüello v. Argüello,* 155 D.P.R. 62, 79 (2001), citando a *Pueblo v. Bonilla Romero,* 120 D.P.R. 92, 111 (1987). Por estas mismas razones, claro está, es que se torna *inaplicable* la doctrina sobre deferencia judicial cuando el tribunal revisado tiene ante su consideración *exclusivamente* prueba documental o pericial. Véanse *Sepúlveda v. Departamento Depto. de Salud,* 145 D.P.R. 560, 573 (1998), y casos allí citados.

[7] Un examen y análisis objetivos de las declaraciones juradas en controversia demuestra que, prima facie, *no existen razones o motivos de peso para aceptar como ciertas algunas de dichas declaraciones o para descartar como no creíbles las otras.*

no resuelva esta controversia jurisdiccional, no procede que consideremos las restantes controversias planteadas.

Tomando en consideración lo antes expresado, procede que se *devuelva* el caso al Tribunal de Apelaciones para que dirima la credibilidad que a su juicio merezcan las contenciones de las partes *y, en particular,* los testimonios de la señora Marrero y el de los licenciados Azizi, Morell, Martínez y Rodríguez.

## III

En mérito de lo antes expuesto, *procede decretar la revocación de la sentencia emitida en el presente caso por el Tribunal de Apelaciones y devolver el caso a dicho foro para la continuación de los procedimientos según lo aquí resuelto.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita. Los Jueces Asociados Señor Corrada Del Río y Señora Rodríguez Rodríguez se inhibieron. El Juez Asociado Señor Rivera Pérez no intervino.